**HARMAN MINING CORPORATION,**
Plaintiff,

v.

**Jo Anne B. BARNHART,**
**Commissioner of Social**
**Security, Defendant.**

No. 2:03CV00081.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Aug. 3, 2004.

Daniel R. Bieger, Copeland & Bieger, P.C., Abingdon, VA, Mary Lou Smith, Howe, Anderson & Steyer, P.C., Washington, DC, for Plaintiff.

Carlton E. Greene, Trial Attorney, Civil Division, Federal Programs Branch, United States Department of Justice, Washington, DC, Sara Bugbee Winn, Assistant United States Attorney, Roanoke, VA, for Defendant.

**OPINION**

JONES, Chief Judge.

In this case under the Coal Industry Retiree Health Benefit Act of 1992 ("Coal

---

Act"), 26 U.S.C.A. §§ 9701–9722 (West 2002 & Supp.2004), the plaintiff Harman Mining Corporation seeks review of the administrative decision by the Commissioner of Social Security assigning it liability for miners formerly employed by a corporation with a similar name, H.E. Harman Coal Corporation. Before me are cross motions for summary judgment, which I resolve in the plaintiff's favor.

Congress enacted the Coal Act to remedy problems in funding health care benefits for retired miners covered under the 1950 and 1974 United Mine Workers of America ("UMWA") Benefit Plans. *See* Coal Act, Pub.L. 102–486, § 19141, 106 Stat. 3037 (1992). The Coal Act merged the 1950 and 1974 UMWA Benefit Plans into the UMWA Combined Fund. 26 U.S.C.A. § 9702(a). Under the Coal Act, signatory operators, entities who are or were signatories to a coal wage agreement, and related persons, entities identified as having an interest in or with a signatory operator, are responsible for paying premiums to the Combined Fund. *See id.* §§ 9701(c)(1)-(2), 9704(a). Related persons to a signatory operator are liable for premium payments if the signatory operator is no longer in business. *See id.* § 9706(a). The Coal Act authorizes the Commissioner of Social Security ("Commissioner") to assign all retired miners and their dependents who were eligible for benefits under the 1950 and 1974 Benefit Plans to signatory operators or related persons. *See id.*

H.E. Harman Coal Corporation ("H.E.Harman") was a Virginia corporation engaged in deep mining coal. It was dissolved in December 1954. The plaintiff, Harman Mining Corporation ("Harman"), was incorporated a month earlier, in November 1954, and engaged in coal mining at the same mine in Harman, Virginia, which H.E. Harman had operated. Harman also purchased the assets of H.E. Harman when the latter went out of business. Harman is a signatory to the 1974 National Bituminous Coal Wage Agreement and later union contracts promising lifetime benefits to retired coal miners and their dependents.

From 1993 to 2000, the Commissioner assigned various retired coal miners and their dependants to Harman in a series of letters dating from September 28, 1993, to September 26, 2000. The Commissioner's first assignment of miners to Harman based on their work for H.E. Harman and the determination that Harman is a "related person" to that corporation was sent in letters dated June 30, 1995. Harman did not challenge that assignment of H.E. Harman miners to it, nor did it challenge other subsequent assignments made based on its status as a "related person" to H.E. Harman. Harman did, however, request the Commissioner to review the September 16, 1996, assignment. The Commissioner completed a review and re-affirmed the assignment of the miners in separate letters dated July 30, 1997, January 27, 1998, April 2, 1998, August 31, 1998, and November 20, 1998.

Harman filed this action on June 9, 2003, challenging the September 16, 1996, assignment to it of miners based on its status as a "related person" to H.E. Harman.[1]

---

1. A list of the miners whose assignment Harman is challenging is at Exhibit D of the Complaint.

In addition to claiming that it is not related to H.E. Harman, Harman asserts that the Coal Act, insofar as it may provide for the assignments to Harman based on miners' employment by H.E. Harman, is unconstitutional under the Due Process and Takings Clauses, and that assignments to the class of contributors identified under 26 U.S.C.A. § 9705(a)(3) are unconstitutional, thus rendering the whole, unseverable Act unconstitutional. Because I will grant Harman summary judgment, I need not address these claims.

Before me now are cross motions for summary judgment.[2] Harman asks this court to declare that it is not related to H.E. Harman under the Coal Act, to order the Commissioner to withdraw all assignments of retired miners to it based on work done for H.E. Harman, and to prohibit future assignments on this basis. The Commissioner requests the court to dismiss all of Harman's claims or, in the alternative, to grant her summary judgment on all of Harman's claims.[3]

■ The Administrative Procedure Act ("APA") governs this court's review of the Commissioner's assignment of the miners at issue in this case. *See* 5 U.S.C.A. § 704 (West 1996 & Supp.2002); *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 301 (4th Cir. 2000), *aff'd,* 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). Under the APA, this court may not set aside these assignments unless it finds that the Commissioner's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A); *see A.T. Massey Coal Co. v. Massanari,* 305 F.3d 226, 236 n. 16 (4th Cir.2002); *Piedmont Envtl. Council v. United States Dept. of Transp.,* 159 F.Supp.2d 260, 268 (W.D.Va.2001). Under this standard, I "must determine whether the [Commissioner] has based [her] decision on a consideration of the relevant factors, has articulated a rational connection between the facts found and the decision made, and has not made a clear error of judgment." *Shenandoah Ecosystems Def. Group v. United States Forest Service,* 144 F.Supp.2d 542, 547 (W.D.Va.2001) (citation omitted). This court's review of the Commissioner's decision should be confined to the record that was before the Commissioner at the time of her decision. *Piedmont,* 159 F.Supp.2d at 270.

Guided by these principles, I must review the parties' cross motions for summary judgment.

■ Harman contends that the Commissioner's assignment to it of miners who were employed by H.E. Harman based on its status as a related person to H.E. Harman should be set aside because it is not a related person to H.E. Harman. Harman argues that the administrative record does not support the Commissioner's finding on this issue. The Commissioner asserts that her finding that Harman is a related person to H.E. Harman was not arbitrary and capricious because both corporations are under common control, "either through control by a common

---

**2.** The Commissioner has moved to dismiss, or the alternative for summary judgment. The particular procedural mechanism of the civil rules is immaterial in this case, since the standard of review is that contemplated by the Administrative Procedure Act. *See Environment Now! v. Espy,* 877 F.Supp. 1397, 1421 (E.D.Cal.1994). For convenience's sake I will refer to the parties' cross motions for summary judgment, even though the summary judgment process contemplates the isolation of the factual issues in dispute, which is inappropriate under the APA. *See Lodge Tower Condominium Ass'n v. Lodge Properties, Inc.,* 880 F.Supp. 1370, 1374–75 (D.Colo.1995), *aff'd,* 85 F.3d 476 (10th Cir.1996)..

**3.** The Commissioner claims that this suit is barred by the six-year statute of limitations applicable to suits filed against the United States because her first assignment to Harman based on her determination that Harman is a related person to H.E. Harman became final in 1995, more than six years before Harman's filing of this suit in 2003. *See* 28 U.S.C.A. § 2401 (West 1994). There is no authority to support the Commissioner's contention that the limitations period should begin running from the date that her first assignment to Harman on the basis that it is a related person to H.E. Harman became final, rather than the date on which the specific assignments at issue in this case became final. I therefore hold that Harman's instant claim challenging the Commissioner's final decisions dated from July 30, 1997, to November 20, 1998, is not time barred.

parent to which they were both related—Inspiration—or by virtue of Harman's control of H.E. Harman." (Br. Supp. Def.'s Mot. Dismiss or Summ. J. ("Def.'s Summ. J. Br.") 19.) Based on my review of the administrative record,[4] I agree with Harman that the Commissioner's decision was arbitrary.

The Coal Act states:

(A) In general.—A person shall be considered to be a related person to a signatory operator if that person is—

(i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator;

(ii) a trade or business which is under common control (as determined under section 52(b)) with such signatory operator; or

(iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.

A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii).

(B) Time for determination.—The relationships described in clauses (i), (ii), and (iii) of subparagraph (A) shall be determined as of July 20, 1992, except that if, on July 20, 1992, a signatory operator is no longer in business, the relationships shall be determined as of the time immediately before such operator ceased to be in business.

26 U.S.C.A. § 9701(c)(2). Additionally, "[a]ny employment of a coal industry retiree in the coal industry by a signatory operator shall be treated as employment by any related persons to such operator." *Id.* § 9706(b)(1)(A). Thus, if Harman is a related person to H.E. Harman, the Coal Act deems that H.E. Harman's employees shall be treated as Harman's employees and requires Harman to contribute to the Combined Fund for each miner assigned to it. *See id.* § 9704(a).

For Harman to qualify as a related person to H.E. Harman due to both corporations' control by a common parent or by Harman's control of H.E. Harman, it must conform to the definition in 26 U.S.C.A. § 9701(c)(2)(A). Section 9701 defines related persons as a controlled group of corporations or businesses under common control, as set out in 26 U.S.C.A. § 52(a) and (b). To qualify as a controlled group or to come under common control, individuals must hold at least eighty percent of the voting stock of each corporation or the group of corporations must share a common parent corporation. *See* 26 U.S.C.A. §§ 52(a), (b), 1563(a) (West 2002).

The Commissioner asserts that her finding that Harman and H.E. Harman were under "common control" for purposes of the Coal Act rests on the following evidence presented in the administrative record.

In letters dated September 28, 1993, the Commissioner assigned eight miners and their dependents to Inspiration Coal Corporation ("Inspiration") on the basis that it was related to Harmar Coal Company, Harman Mining Corp., and Harman Mining Corporation. (R. at 1094–97, 1101–04.) According to Harman, Inspiration forwarded this correspondence to Harman because it believed that the assignments were more properly addressed to it. Harman informed the Commissioner by letter

---

**4.** The Commissioner supplied this court with the administrative record that was before her at the time of her decision. It will be referred to as "R."

dated November 3, 1003, that the notice of the assignment of miners had been mailed to the incorrect company and requested the miners' earnings records as well as the basis of assignment for each individual. (R. at 1099.) The Commissioner informed Harman that she was not authorized to provide it with the miners' earnings records but that Harman could request them from Inspiration. (R. at 1107.) Harman apparently received the records from Inspiration and, in a letter to the Commissioner disclaiming liability for the miners who were employed with Harmar Coal Company, a Harman office manager stated that the Harman and H.E. Harman "companies are affiliated." (R. at 1136.) The Commissioner interpreted Harman's response as one on behalf of Inspiration and its use of private earning records sent only to Inspiration as evidence that Harman was a subsidiary of Inspiration and that Harman and H.E. Harman are affiliated. (Def.'s Summ. J. Br. 16.)

The Commissioner also cites Harman's use of H.E. Harman's individual Employee Identification Number ("EIN") to report wages for H.E. Harman years after it had officially been dissolved to support her finding that the corporations are under common control. Earnings records show that H.E. Harman's EIN was used to report wages for eleven miners as late as 1969, long after H.E. Harman officially ceased business in December 1954, and during which period Harman, not H.E. Harman, was the sole owner and operator of the Harman mine. These records further show that Harman simultaneously and separately reported the payment of wages to some of these miners for work done during the same periods. (R. at 1173–74, 1202, 2454, 2535, 2544, 2668, 2745, 2833, 3016.) The Commissioner asserts that Harman's apparent use of H.E. Harman's individual EIN to report wages for that company during these periods could have been accomplished only if Harman

had effective control over that company. (Def.'s Summ. J. Br. 18.)

Finally, the Commissioner cites Harman's repeated explicit and implicit past acceptance of assignments of H.E. Harman miners to it based on its status as a "related person" to that company as further evidence that they are in fact related. For example, in a June 17, 1997 letter, Harman explicitly accepted responsibility for the benefits of miner Donnie Brown although the basis for Brown's assignment to Harman was work Brown had performed for H.E. Harman from 1946 through 1954. (R. at 1957, 2097–98.) Harman also implicitly accepted past assignments based on work done for H.E. Harman by not requesting their review. (R. at 2058, 2061.)

In appealing the contested assignments to the Commissioner, Harman presented her with an affidavit from its president as well as certificates from the Virginia State Corporation Commission. The certificates from the State Corporation Commission recite that H.E. Harman was incorporated on April 9, 1934, but is no longer in good standing because a certificate of dissolution was issued for it on December 17, 1954, and is still in effect, and that Harman was incorporated on November 23, 1954. The affidavit from Harman's president, Henry E. Cook, Jr., states that Harman is not the same corporation as H.E. Harman, as verified by the certificates of the Virginia State Corporation Commission; Harman has never owned H.E. Harman and H.E. Harman has never owned Harman; Harman and H.E. Harman have never merged; Harman and H.E. Harman have not been members of a control group of corporations within the meaning of 52(a) of the Internal Revenue Code; and Harman has never had the tax characteristics of H.E. Harman. (R. at 1914–15.)

I find that the Commissioner's decision based on this evidence that Harman is a related person to H.E. Harman was arbitrary and capricious. None of the evidence relied upon by the Commissioner— Harman's acceptance of past assignments, a Harman employee's statement that it is affiliated with H.E. Harman, and Harman's use of H.E. Harman's individual EIN—shows that Harman and H.E. Harman were under common control at the time immediately before H.E. Harman ceased business. There is no basis on which the Commissioner can conclude that they are a controlled group of corporations because there is no evidence speaking to either corporation's stock ownership of the other.

For the following reasons, I find that the administrative record also fails to show that both corporations share a common parent corporation.

The Harman employee's statement of "affiliation" with H.E. Harman is, at best, vague. By stating that the corporations are affiliated, the Harman office manager may have been referring to Harman's use of the same mine H.E. Harman had used or Harman's purchase of H.E. Harman assets. Even considering that the statement was made in Harman's correspondence with the Commissioner regarding Coal Act assignments, it does not indicate that the corporations are related persons any more than it indicates that, for example, Harman is a successor in interest to H.E. Harman.[5] I agree with Harman that the employee's statement says nothing about the existence of a legally significant relationship for Coal Act purposes. Furthermore, from the affidavit submitted by Harman's president, the Commissioner possessed evidence that neither corporation has ever owned the other or merged and neither have been members of a control group within the meaning of the Coal Act.

Similarly, Harman's use of H.E. Harman's individual EIN to report employee wages is no more indicative of a "related person" relationship than it is of a successorship relationship or, as Harman argues, of a clerical error.

Harman's decision to accept past Coal Act assignments based upon a relationship that Harman now challenges does not constitute an admission that Harman and H.E. Harman are related persons. Harman explains that it was unaware of the basis for the past assignments that it had not disputed, but that once it realized that they rested upon employment with H.E. Harman, it appealed them. Although one plausible interpretation of Harman's failure to contest these past assignments is that it is a concession that such a relationship does in fact exist, there are other equally plausible explanations, as Harman indicates. I find the Commissioner's decision to make the assignments at issue based on evidence that may or may not indicate that Harman is a related person to H.E. Harman was arbitrary and capricious.

For these reasons, I hold that the Commissioner's decision that Harman was a related person to H.E. Harman was arbitrary and capricious. In so holding, I nonetheless recognize the reality addressed by the Coal Act that "coal operators frequently reorganize their corporate

---

5. In *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002), the Supreme Court held that the language of the Coal Act does not permit the Commissioner to assign retired miners to the successor in interest of out-of-business signatory operators. It should be noted that some of the Commissioner's earlier assignments of retired H.E. Harman miners to Harman were based on her finding that Harman was a successor in interest to H.E. Harman.

structures and spin off or consolidate subsidiaries." *A.T. Massey,* 305 F.3d at 239. Even so, assignments must be founded on evidence more substantial than that contained in the administrative record in this case.

Since I have held that the Commissioner's determination that Harman is a related person to H.E. Harman was arbitrary and capricious, I need not address the Commissioner's other arguments regarding the constitutionality of the Coal Act.

An appropriate final judgment will be entered.